**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0155n.06
Filed: March 18, 2008

**No. 07-5779**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DEBORAH PRECHTEL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KELLOGG'S, d/b/a KELLOGG'S | ) | WESTERN DISTRICT OF KENTUCKY |
| SNACKS, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: DAUGHTREY and SUTTON, Circuit Judges; POLSTER,[*] District Judge.

**PER CURIAM.** The plaintiff, Deborah Prechtel, appeals the district court's grant of summary judgment to the defendant, Kellogg's, doing business as Kellogg's Snacks, on Prechtel's state-law claims of sex-based discrimination, retaliation, and unequal pay. The district court held that the plaintiff failed to adduce any evidence to establish a genuine issue of material fact regarding the claims raised in her complaint. We agree, and we therefore affirm the district court's judgment.

At the time she filed suit, Prechtel was a long-time employee of a cookie company in Louisville, Kentucky, that was eventually purchased by Kellogg's. After that corporate

---

[*]The Hon. Dan A. Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

acquisition, Ray Hauser became the plant operations manager at the Louisville facility and assumed supervisory control over the job functions of the plaintiff and other "team leaders" who, in turn, supervised "line managers" for each of the plant's three shifts. However, on June 14, 2005, Hauser informed Prechtel that her job performance did not meet company standards and that she had the option of remaining as a team leader and having her employment deficiencies documented, agreeing to a severance package, or accepting a demotion to the position of line manager.

Ten days later, on June 24, 2005, Jenny Stewart, another team leader and the plaintiff's closest friend at work, informed Hauser that Prechtel was contemplating filing a sexual harassment suit against him and against Kellogg's. The company then began an internal investigation of the charges, which ultimately led company officials to conclude that the plaintiff's claims could not be substantiated. Even prior to the conclusion of that inquiry, however, Prechtel took the first of two consecutive leaves of absence from the company and did not return to work – as a line manager rather than as a team leader – until January 17, 2006. In the meantime, she had filed a lawsuit in Kentucky state court, pursuant to provisions of the Kentucky Civil Rights Act, K.R.S. Chapter 344, and that action was removed to federal court by the defendant on diversity of citizenship grounds.

In her employment discrimination action, Prechtel alleged that Hauser made certain sexual advances toward her that created a hostile work environment and that her rejection of those advances led to Hauser's decision to demote her, force her into early retirement,

or document problems with her work. She also claimed that Kellogg's management retaliated against her for alleging sexual discrimination by citing her for various workplace deficiencies during a three-month period from March to June 2006, and that she was paid a lesser salary than comparably-situated male employees.

In almost all respects, the district court correctly identified the legal principles relevant to the plaintiff's allegations and properly applied those precedents to the facts presented. In doing so, the court concluded that Prechtel failed to adduce evidence of severe or pervasive harassment, that she failed to substantiate gender-based pay differentials at the Louisville facility, and that she did not successfully link any job discipline to the company's knowledge of and retaliation for her discrimination allegations. Issuance of a full, written opinion by this court addressing these issues and determinations would be duplicative and would serve no useful purpose. Accordingly, we AFFIRM the judgment of the district court, in part upon the reasoning set out by that court in its opinion and order filed on June 1, 2007.

Two issues nevertheless require additional comment. First, the plaintiff's complaint alleged that Hauser's actions not only created a hostile work environment at Kellogg's Louisville plant, but also that "[p]romotional opportunity and continued employment were made contingent upon Plaintiff complying with said sexual advances." The district court, however, did not discuss explicitly the so-called *quid pro quo* aspect of Prechtel's

discrimination claim, perhaps because there was so little in the record to substantiate it.

As we noted in <u>Bowman v. Shawnee State University</u>, 220 F.3d 456, 461 (6th Cir. 2000):

> To prevail under a sexual harassment claim without showing that the harassment was severe or pervasive, the employee must prove the following: 1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was on the basis of sex; 4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of *respondeat superior* liability.

Absolutely no evidence adduced in this case by the plaintiff suggests that Prechtel's rebuffs of Hauser's alleged advances were the impetus for any adverse employment action. Indeed, if such were the case, Hauser allowed an inordinate amount of time to elapse after the rejections of his overtures before taking action detrimental to the plaintiff in mid-June 2005. For example, the three inappropriate comments allegedly made by Hauser to Prechtel occurred seven or eight months prior to that time, and the alleged attempt by Hauser to grab the plaintiff's leg (even though he was seated immediately adjacent to *his* female boss at the time) occurred three months prior to the meeting at which the plaintiff was given the three options for her future with the company. Under such circumstances, Prechtel has failed to establish a genuine issue of material fact that militates against the grant of summary judgment to the defendant.

Second, in discussing the reasons supporting the grant of summary judgment to Kellogg's on Prechtel's retaliation claim, the district court, relying upon our decision in Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee, No. 05-5258, 2006 WL 3307507 (6th Cir. Nov. 14, 2006), held that "participation in an internal investigation initiated by [her employer] in the absence of any pending EEOC charge is not a protected activity under the participation clause [of Title VII]." Id. at *3. Recently, however, the United States Supreme Court granted certiorari in Crawford to consider the question whether "the anti-retaliation provision of section 704(a) of Title VII of the 1964 Civil Rights Act protect[s] a worker from being dismissed because she cooperated with her employer's internal investigation of sexual harassment." Crawford v. Metro. Gov't of Nashville and Davidson County, Tennessee, No. 06-1595, 2008 WL 161476 (U.S. Jan. 18, 2008); pet. for cert. found at 2007 WL 1594338, at *i (U.S. May 30, 2007). Consequently, the possibility now exists that the Supreme Court could reverse the Sixth Circuit's ruling in Crawford and hold that a plaintiff does indeed engage in "protected activity" when involved in an internal investigation of discrimination, even in the absence of a pending charge with the Equal Employment Opportunity Commission.

Regardless of the Supreme Court's ultimate ruling in Crawford, however, the district court's denial of Prechtel's retaliation claim need not be overturned in this case because the district court provided an alternative basis for that decision. In its memorandum opinion, the district court noted that even if Prechtel could establish that she engaged in "protected activity," she had not adduced any evidence to establish that the defendant was

aware of that activity at the time it undertook the allegedly retaliatory acts. In fact, Hauser first learned of the possibility that Prechtel might seek legal redress for alleged wrongs ten days after he spoke with the plaintiff about her options with the company. Furthermore, discussing the disciplinary write-ups Prechtel received in 2006, the district court correctly recognized that the plaintiff offered no evidence that her team leader "knew of her previous sexual harassment complaints and that, if he did, [that] his counseling of her was motivated by that knowledge." Indeed, as the district court noted, Prechtel even "admit[ed] in her deposition that she did not know whether [her team leader who identified her work deficiencies] had knowledge of her prior complaints, and Plaintiff's counsel have pointed to no piece of evidence that would show that he did."

For the reasons articulated in the district court's memorandum opinion filed on June 1, 2007, as well as those set out above, we AFFIRM the judgment of the district court.